## BRYAN v. GRIFFIN.
### No. 10494.

Circuit Court of Appeals, Sixth Circuit.
March 15, 1948.

Randolph A. Brown, of Louisville, Ky. (David C. Walls and Randolph A. Brown, both of Louisville, Ky., on the brief), for appellant.

John T. E. Stites, of Louisville, Ky. (Henry J. Stites and John T. E. Stites, both of Louisville, Ky., of counsel; Stites & Stites and John T. Edmunds, Jr., all of Louisville, Ky., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

The principal question presented by this appeal is whether the position held by appellant in appellee's plant prior to induction into the army is a temporary position within the provisions of § 8(b) of the Selective Service and Training Act of 1940 as amended, 50 U.S.C.App. § 308(b), 50 U.S.C.A.Appendix, § 308(b). The veteran sought to be restored to the employment which he had immediately prior to his war service. The District Court held that the position had been temporary, that appellant therefore was not covered by the Act, and dismissed the petition.

The facts out of which the case arises are uncontroverted. The appellee, in June, 1941, had a small sheet metal fabricating business in Louisville, Kentucky, in which a number of sheet metal workers were employed, varying from four to fifteen, according to need. In the fall of 1941 the appellee secured a Navy contract for the erection of ventilating systems in P. C. boats which were being constructed at shipyards situated in Jeffersonville, Indiana. The work continued for approximately twelve months. Appellant was hired on October 23, 1942, as a laborer in appellee's Louisville plant.

Toward the end of 1942 the appellee secured a subcontract with the Navy which called for the doing of sheet metal work on L. S. T. vessels which were being built at the Jeffersonville shipyards. In the course of the performance of this contract the personnel in appellee's plant was greatly increased. Appellee called the operation "Naval Division" and maintained separate sets of books and separate bank accounts for it. Shipyard cards were issued to mechanics working at Jeffersonville, under which they were paid a lower rate than that paid to journeyman mechanics at Louisville, and such men working at Jeffersonville were charged $62.50 for union membership, which was one-half of the usual rate for sheet metal workers. The Navy supplied appellee with application forms for employment, in which the signer acknowledged that his job was temporary. The appellant at no time signed such an application, and was never informed by the appellee, prior to his entry into the Army, that his work was temporary.

On April 5, 1943, appellant was promoted to apprentice sheet metal worker, and on January 31, 1944, he was promoted to journeyman sheet metal worker, and was transferred to the Jeffersonville shipyards to work on the Navy contract. He worked there until December 5, 1944, when he was inducted into the Army. After his honorable discharge from the Army on September 5, 1945, and within the statutory period, appellant applied to the appellee for his former job as a journeyman mechanic. This was refused, but the appellee offered him a job as an apprentice sheet metal worker, which then paid fifty cents an hour less than the current wage for journeyman mechanics. The union would not permit appellant to accept this offer upon the ground that he was a journeyman sheet metal worker. On January 7, 1946, appellee offered appellant work as journeyman mechanic, and appellant worked at this for two weeks, until January 18, 1946, when he was discharged upon the ground that he was unable satisfactorily to perform the duties of the position. It was shown that on or about April 3, 1946, appellee employed some sixteen journeyman sheet metal workers. Two of appellee's officials stated at the trial that the appellant was discharged solely for lack of qualifications.

The pertinent portions of the Selective Training and Service Act of 1940, as amended, are as follows:

750

Sec. 308, 50 U.S.C.App., 50 U.S.C.A.Appendix, § 308.

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service * * *.

\* \* \* \* \* \*

"(B) if such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so; * * *

"(e) In case any private employer fails or refuses to comply with the provision of subsection (b) or subsection (c), the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action."

Appellant contends that the District Court erred as a matter of law in holding that the position held prior to his induction into the Army was temporary. Appellee urges that the judgment was correct, and if not sustained on this point, it must be sustained on the ground (1) that under § 308(b) (B) the appellee's circumstances had so changed as to make it impossible or unreasonable to restore appellant to the position in question or to a position of like seniority, and (2) that the appellant is not qualified to perform the duties of his former position.

■ As to the nature of the position, we think that the District Court was in error. Section 308(b) does not define the positions covered as permanent. It simply defines them as "other than * * * temporary." The purpose of the Act was "to protect the veteran in several ways. He who was called to the colors was not to be penalized on his return by reason of his absence from his civilian job. He was, moreover, to gain by his service for his country an advantage which the law withheld from those who stayed behind." Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 284, 66 S.Ct. 1105, 1110, 90 L.Ed. 1230, 167 A.L.R. 110. The Act is to be liberally construed for the benefit of those who left private life to serve their country in its hour of great need. Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587; Fishgold v. Sullivan Drydock & Repair Corp., supra. Appellee's argument would require us by implication to read the word "permanent" into the statute, and this is a limitation which would bar many thousands of servicemen from relief under the Act. We cannot assume that the Congress meant this enactment to apply only to jobs in existence prior to the years of the war emergency. "Temporary," we think, means "lasting for a time only," or casual, as distinguished from regular. It does not apply to continuing service such as was rendered by this appellant. Since employment for an indefinite period was contemplated in a position to be held at mutual will until terminated, we think the position was "other than * * * temporary." Cf. McClayton v. W. B. Cassell Co., D.C., 66 F.Supp. 165. As a matter of fact, 21 sheet metal workers were at the time of trial employed at appellee's plant as compared with 15 or less in June, 1941. Some 16 of these are journeyman mechanics, so that more of these positions exist than at the time when appellant was first employed in appellee's plant.

■ Appellee's circumstances therefore have not so changed as to make it impossible or unreasonable to restore appellant's position if he is qualified. Cf. Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 655. Appellant is entitled to employment as a journeyman mechanic, assuming that he can perform the duties of the position, unless all of such positions are held by workmen who are his seniors.

Fishgold v. Sullivan Drydock & Repair Corp., supra, 328 U.S. 285, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110. The burden of proof rested upon the appellee to show that all such positions were held at the time of appellant's application by workmen senior to him, if this was the case; but it introduced no evidence upon this point.

However, we think the judgment must be affirmed upon the ground that the appellant is not "still qualified" under § 308(b) to perform the duties of a journeyman mechanic. The record shows that a journeyman mechanic must be able to read blue prints, to do layout work and all classes of fabrication, and to direct fabrication on the job. Appellee's plant operated under a contract with the A. F. of L. Union, which requires four years of apprenticeship before a man can become a journeyman mechanic. Appellant was aware of the four years' apprenticeship requirement. While it is testified that this period may be shortened in exceptional cases, and the provision was waived during the war emergency, it is evidence as to the requirements of the work. The record presents various affidavits in support of an application for appellant's deferment during the progress of the war, and he was not told that his work was unsatisfactory prior to his induction into the service; but these circumstances arose in connection with appellant's work at the shipyards. It is uncontradicted that the work there performed was a huge mass production job of air-conditioning L. S. T. boats of basically the same specifications. The work required was quite different from that required in the air-conditioning of office or industrial buildings and other operations now performed at appellee's plant. It is testified, and not denied, that all that was required to secure work on the Navy contract was that a man could read and write. The contractor was supposed to teach him how to do the job. The work which appellant did at Jeffersonville was a specialized operation in mass production, cutting metal for the entire operation force, working on the shears. He admits that he has had no experience in the reading of blue prints nor in laying out work. It is uncontroverted that he was discharged after his return to appellee's plant for the sole reason that he was unable to perform his duties as journeyman mechanic, and that some of the assemblies on which he worked were found to be inferior. It is thus evident that appellant is not qualified to perform the work of journeyman mechanic under the conditions in appellee's plant as they now exist, and this, under § 308(b) (2), constitutes a defense to the action.

The judgment of the District Court is affirmed.